UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMESHIA SCOTT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 3:18-CV-00634-X |
| v. | § | |
| | § | |
| NAVARRO COLLEGE | § | |
| DISTRICT d/b/a NAVARRO | § | |
| COLLEGE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tameshia Scott claims that defendant Navarro College District d/b/a Navarro College ("Navarro College") retaliated against her for refusing the sexual advances of her supervisor when Navarro College terminated her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16 et seq. and 42 U.S.C. § 1981a. Navarro College moved for summary judgment (Doc. No. 26). For the reasons that follow, the Court **GRANTS** Navarro College's motion for summary judgment and dismisses this action.

### I. Factual Background

Navarro College has a main campus in Corsicana and branches in Waxahachie, Midlothian, and Mexia. The board of trustees established a policy delegating sole authority to hire or terminate employees to the president, who at all relevant times was Dr. Richard Sanchez. Tameshia Scott began working in Navarro College's dining

services in 2013. In 2016, Scott was transferred from being a cook at the deli in Corsicana to Beau's Bistro in Waxahachie; and she was later promoted to manager of the bistro. As manager, Scott reported to Joseph Barnes, Director of Dining Operations.

Scott alleges that on different occasions, Barnes made inappropriate comments about her body, told her things he would do to her if he was not married, gave her gifts, rubbed her arms, touched her back, kissed her on the back of the neck, and attempted to slide his hand down her back and onto her buttocks. Scott says she rebuffed these advances.

The bistro did not fare well financially. Its expenses of $78,058.26 exceeded its revenue by $42,351.97 from September through December 2016. Dr. Sanchez decided to close the bistro effective February 10, 2017. Barnes advocated to his supervisor (the Vice President of Human Resources) that Scott be transferred back to the Corsicana campus. Scott was ultimately hired for a full-time position in the deli at Corsicana effective February 17.

Barnes then directed Scott to clean and shut down the bistro the week of February 13. She was scheduled to take personal time off the week of February 20 and was to complete the task before then, apparently at a reduced wage. Scott was frustrated at the lack of support in the task. Barnes sent some support from other sources to assist, such as sending a crew to empty the freezer. Scott admitted that, when she left for her time off, the bistro "wasn't fully cleaned." (Doc. No. 27 at 21). Barnes instructed Scott to report to the Bistro the Tuesday following her time off to finish the assignment. Scott told Barnes she would not continue such an assignment

at reduced pay. Barnes responded that he would do as told if he were in Scott's shoes and that if she did not report as directed, he would assume she had resigned. Scott responded "Ok." (Doc. No. 38 at 4). Scott did not show up that Tuesday after informing Barnes she checked into the hospital for blood pressure and anxiety issues. When Scott arrived for work the following day (March 2), Barnes accompanied her to Dr. Sanchez's office, where Dr. Sanchez informed her that he terminated her employment for insubordination. Scott did not raise allegations of sexual harassment at that time or at any time during her employment.

Scott filed an Equal Employment Opportunity Commission charge of discrimination and later filed this lawsuit. She raises Title VII claims for retaliation and quid pro quo sexual harassment.[1] Navarro College moved for summary judgment (Doc. No. 26), and the motion is ripe for review.

## II. Summary Judgment Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3]

---

[1] Navarro College addressed the possibility that Scott raised a claim for a hostile work environment due to sexual harassment. In her response, Scott never defended such a claim, so the Court finds that it is abandoned if it ever was pled.

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  Retaliation Claim

## A.  Title VII Retaliation Framework

Scott's Title VII claim relies on circumstantial evidence.  Therefore, the claim is subject to the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, Scott has the initial burden to establish a *prima facie* case of retaliation—she must produce evidence that she: (1) engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link exists between that protected activity and the adverse employment action.[4]

The *prima facie* case, once established, creates a presumption of retaliation and the burden then shifts to Navarro College to articulate a legitimate, non-discriminatory reason for the adverse employment action.[5]  If Navarro College articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to Scott who then "must put forward evidence rebutting each of the nondiscriminatory reasons [Navarro College] articulates."[6]  Scott may only do so by showing the proffered reason is pretext for retaliation.[7]  In other words, Scott must show Navarro College would not have terminated her employment but for its

---

[4] *See Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

[5] *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).

[6] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

[7] In discrimination cases (not retaliation cases), mixed motives are another path to rebutting the employer's nondiscriminatory reasons.  *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).  This is not so with retaliation cases, in a case the Supreme Court decided that came from the Fifth Circuit.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352–57 (2013) (holding that but-for causation applies to retaliation cases and mixed-motive analysis applies only to status-based discrimination claims such as race, color, religion, sex, and national origin).

retaliatory motive.[8]

## B. Scott's Retaliation Claim

The court assumes for the sake of argument that Scott has made a *prima facie* showing of retaliation. At this juncture, Navarro College would have the burden to produce evidence of a legitimate, non-retaliatory reason for terminating Scott's employment.

Navarro College has satisfied its obligation. Navarro College has provided evidence that the College President terminated Scott's employment due to insubordination in her failure to complete her duties shuttering Beau's Bistro on the Waxahachie campus before reporting for duty to her new position at the Corsicana campus. Circuit precedent has established that insubordination is a legitimate business reason for termination.[9] Therefore, Navarro College has met its burden to produce evidence of a legitimate and non-retaliatory reason for terminating Scott's employment.

The burden then shifts back to Scott to bring forth some evidence that her termination for insubordination was pretext. Scott makes three arguments. First, Scott argues that Barnes's report to Dr. Sanchez omitted that Barnes refusal was to clean the bistro at a reduced rate of pay, not an outright refusal to do the job. Second, Scott argues that Barnes texted Scott that if he were in her position, he would complete the cleaning of the bistro. Although Scott replied "Ok," Barnes omitted this

---

[8] *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[9] *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.").

reply from the text string he showed his supervisor and Dr. Sanchez. (Doc. No. 38 at 11). Scott argues this left the mistaken impression with Dr. Sanchez that Scott had an intent to resign. Third, Scott argues that Barnes's report to Dr. Sanchez was facially inconsistent in that it stated the project would take between February 13th and 17th but also chastised her because "on Monday February 13, I drove to Waxahachie to inspect [Scott]'s work and I found that she had not complete [sic] any of the time she was supposed to clean." (Doc. No. 38 at 11). Scott argues this left a limited picture, and had Dr. Sanchez had the full picture, he "could have reasonably come to a different decision." Scott also contends these two facts indicate that, "though Sanchez may have pulled the trigger, Barnes loaded the pistol and directed its aim at Plaintiff." (Doc. No. 38 at 11).

These assertions do not qualify as evidence of pretext in that they are not evidence "showing that the employer's proffered explanation is false or 'unworthy of credence.'"[10] Instead, these assertions, at most, contend Dr. Sanchez was not aware of every fact surrounding Scott's failure to complete the cleaning of the bistro. But the Fifth Circuit has made clear that "disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[11] Importantly, "an honest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination."[12] That Dr. Sanchez could have known additional facts when deciding

---

[10] *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

[11] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

[12] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (citing *Smith v. St. Regis Corp.*, 850 F.Supp. 1296, 1318 (S.D.Miss.1994), aff'd, 48 F.3d 531 (5th Cir. 1995)).

to terminate Scott's employment is not evidence that that Dr. Sanchez did not actually believe Scott was insubordinate but still terminated her employment. The true aim of Scott's assertions appears to focus on cat's-paw causation, addressed below. But such arguments do not show pretext.

### III.  Quid Pro Quo Harassment

### A.  Title VII Quid Pro Quo Harassment Framework

In addition to prohibiting retaliation, Title VII forbids "an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[13]  "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII."[14]  But there must be a causal nexus between a supervisor's unwelcome sexual behavior toward the plaintiff and the adverse employment action.[15]

### B. Scott's Quid Quid Pro Quo Harassment Claim

Scott alleges that the termination of her employment "was predicated on her resistance of Mr. Barnes' unwanted sexual advances." (Doc. No. 1 ¶ 14).  The evidence Barnes points to for the quid pro quo claim is that in November 2016, Scott alleges Barnes walked up behind her and kissed her on the neck, and she responded by saying

---

[13] 42 U.S.C. § 2000e–2(a)(1).

[14] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998).

[15] *Frensley v. N. Miss. Med. Ctr., Inc.*, 440 F. App'x 383, 386 (5th Cir. 2011) (per curiam).

"Don't do that." (Doc. No. 38 at 12). Scott also argues that Barnes failure to give Dr. Sanchez all the relevant facts involves credibility determinations that are inappropriate for summary judgment. Finally, Scott contends that the pictures Barnes took of the bistro did not accurately reflect its state.

Viewing these issues in the light most favorable to Scott, she still fails to raise a genuine dispute of material fact that her failure to acquiesce to Barnes advances was causally connected to her termination for insubordination in not completing the cleaning of the bistro. Scott's assertions are based on "the temporal proximity of the incident and her subjective belief that the two events are related."[16] But temporal proximity is not an accepted form of evidence for proof of causation in quid pro quo claims in the Fifth Circuit.[17] Further, two pieces of undisputed evidence indicate the above assertions do no relevant work on causation. First, Scott admitted that Barnes never promised employment benefits or threatened harm to her employment in connection with his alleged advances. And second, when the bistro closed for financial reasons, Barnes told Scott "he would make sure" she had a job at the Corsicana campus and told the deli manager in Corsicana that it would be an injustice for Scott to lose her job when the bistro closed. (MSJ App. 340 at 151:14-18; App. 474-75, ¶ 10.)

At this point, the only thing that could save Scott's quid pro quo claim is cat's paw liability. The theory behind cat's paw liability is that one employee with

---

[16] *Frensley*, 440 F. App'x at 387–88.

[17] *Id.* at 387 ("[W]e have never used such evidence [of temporal proximity] as proof of causation for quid pro quo claims.").

discriminatory animus might be controlling the employee who made the ultimate employment decision.[18]   But there are two key components for cat's paw liability applicable here: (1) Barnes must have had "influence or leverage over" Dr. Sanchez, and (2) Dr. Sanchez must have "merely acted as a rubber stamp."[19]  Scott presents no competent evidence that Barnes had influence over Dr. Sanchez or that Dr. Sanchez was a mere rubber stamp.  Uncontroverted evidence shows Dr. Sanchez, the College President, had sole authority to discharge employees and independently decided to discharge Scott based on his evaluation of her insubordination.  The undisputed evidence further shows that Barnes did not have input on Dr. Sanchez's termination decision or have a recommendation for Dr. Sanchez.  Accordingly, cat's paw liability is inapplicable on this record, and Scott has not raised a genuine dispute of material fact on the causal nexus between her rejection of Barnes's alleged advances and her termination for insubordination.

## IV. Conclusion

In conclusion, Scott has failed to create a genuine dispute of material fact on the ultimate question of pretext as to her retaliation claim.  She has failed to introduce evidence that would enable a reasonable jury to find that the proffered reason for her termination (insubordination) was not the real reason Navarro College terminated her.  As to Scott's quid pro quo harassment claim, she has failed to raise a genuine dispute of material fact on the causal nexus between her refusal of Barnes alleged advances and Dr. Sanchez terminating Scott for insubordination.

---

[18] *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 203 (5th Cir. 2007) (per curiam).

[19] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

Therefore, given the absence of a genuine dispute of material fact on either claim, Navarro College's Motion for Summary Judgment (Doc. No. 26) is **GRANTED** and Scott's complaint is **DISMISSED** with **PREJUDICE**.  A final judgment will issue separately.[20]

      **IT IS SO ORDERED** this 4th day of February**.**

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[20] Under section 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision."  It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.